## Rogers v. Youngstown
*[Cite as 4 AOA 239]*

*Case No. 89 C.A. 60
Mahoning County, (7th)
Decided June 13, 1990*

*Paul J. Gains, Esq., 204 Stambaugh Bldg.,
Youngstown, Ohio 44503, for Plaintiff-Appellee/
Cross-Appellant.*

*Edwin Romero, Law Director, Cheryl Waite, Asst.
Law Director, City of Youngstown, 26 S. Phelps
Street, Youngstown, Ohio 44503, for Defendants-
Appellants/Cross-Appellees.*

O'NEILL, P.J.

This cause originated in the trial court when the plaintiff-appellee filed a complaint in declaratory judgment. It was alleged in the complaint that, on April 18, 1987, Phillip B. Rogers and the City of Youngstown remained as defendants in a civil case filed in the Federal Court. It was also alleged that Phillip B. Rogers had requested legal representation by the City of Youngstown and had been refused the same. Allegedly, Phillip B. Rogers retained personal counsel to defend him in the civil case. The complaint filed in the Federal Court alleged that, at all times pertinent to the complaint, Phillip B. Rogers had acted in good faith and within the scope of his employment as a police officer employed by the City of Youngstown. The federal case was eventually dismissed and it was requested in the complaint for declaratory judgment that the trial court make a declaration as to the rights of Phillip B. Rogers to a defense in the Federal Court by the City of Youngstown and, especially, award him his reasonable attorney fees incurred in a defending the action in the Federal Court, and that the court also award him reasonable attorney fees in pursuing the declaratory judgment action.

The declaratory judgment action was disposed of by the trial court on motions for summary judgment. The trial judge concluded that, pursuant to statutory law of Ohio, the defendant City of Youngstown had a duty to provide for the defense of the plaintiff Phillip B. Rogers. The court further found that the complaint filed in the Federal Court alleged that the plaintiff Phillip B. Rogers, at all times pertinent thereto, had acted in good faith while in the scope of his employment.

In final judgment, the trial court determined that the plaintiff, Phillip B. Rogers, was entitled to recover from the defendant, the City of Youngstown, the sum of $7,792.50 as and for his reasonable attorney fees and the sum of $40.25 as and for his reasonable expenses.

The first assignment of error complains that the trial court erred in ruling that Revised Code Sec. 2744.07 required the City of Youngstown to provide a defense for appellee in his sister's federal court 1983 law suit, especially in light of the fact that appellee testified, and the federal court found that appellee's underlying actions forming the basis of the federal suit were not within the scope of appellee's employment with appellant.

R.C. 2744.07 (A) (1) reads as follows:

"Except as otherwise provided in this division, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission of the employee in connection with a governmental or proprietary function if the act or omission occurred or is alleged to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employment or official responsibilities. Amounts expended by a political subdivision in the defense of its employees shall be from funds appropriated for this purpose or from proceeds of insurance. The duty to provide for the defense of an employee specified in this division does not apply in a civil action or proceeding that is commenced by or on behalf of a political subdivision."

The complaint filed in the Federal Court, alleged, in pertinent part:

"Plaintiff alleges that defendant Phillip B. Rogers unlawfully assaulted and beat plaintiff, in violation of plaintiff's constitutional rights, while defendant Rogers was in uniform and on duty as a police officer of the Youngstown Police Department."

We must make note of the fact, at this instance, that eventually it was determined by the Federal Court that there was no basis in fact nor in law for the foregoing allegations. Furthermore, the appellee was disciplined as a result of his actions which gave rise to the complaint filed in the Federal Court.

Regardless of what transpired after the complaint was filed in the Federal Court, R.C. 2744.07(A)(1) very simply states that a political subdivision must provide for the defense of an employee in any state or federal court in any civil action to recover damages for injury, death or loss to person or property allegedly caused by an act or omission of the employee in connection with the governmental or proprietary function if the act or omission is *alleged* to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employment or official responsibilities. The statute is mandatory. An allegation in a complaint, although later found to be without any basis, triggers the mandatory duty on the part of the political subdivision.

The appellant points out that we should go beyond the mere allegation and resort to the statutory definition of employee of a political subdivision as it is set forth in R.C. 2744.01(B), reading as follows:

"'Employee' means an officer, agent, employee, or servant, whether or not compensated or full-time or part-time, who is authorized to act and is acting within the scope of his employment for a political subdivision. * * *."

The appellant argues it is up to the political subdivision to determine whether or not an employee was acting as an employee at the time of actions alleged in a complaint. We cannot agree with this contention. In a suit filed in the Federal Court or, for that matter, any court relative to a 1983 action, the determination of the relationship between the individual named and the political subdivision is to be determined by the court. The relationship of the appellee to the appellant was the whole basis for the appellant's defense in the Federal Court. The appellant insisted in their answer to the complaint filed in Federal Court that, at all times relevant to the issues raised in the complaint, the appellee Rogers was acting as a private individual and not as an agent or employee of the City of Youngstown.

The appellant goes on to argue by focusing our attention to R.C. 2744.07(C), which reads as follows:

"If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A)(1) of this section, the employee may file, in the court of common pleas of the county in which the political subdivision is located, an action seeking a determination as to the appropriateness of the refusal of the political subdivision to provide him with a defense under that division."

The appellant contends that the trial court, reading Section 2744.07 in light of the definition contained within Section 2744.01(B) and taking whatever additional evidence is necessary, may only decide whether appellant acted appropriately in light of the statutes and evidence. The statute, R.C. 2744.04(A) (1), mandates that a defense be provided where an allegation is made contending that an employee acted within the scope of employment. An allegation is not an evidentiary matter. What develops subsequent to the allegation is, by a simple reading of the statute, not dispositive of the mandatory duty imposed upon the political subdivision. It is firmly established that subsequent to the allegation complained in the Federal Court complaint, by way of evidence, the appellant was on a sortie of his own in the actions giving rise to the federal complaint. If we were to rule that this subsequent evidence should relieve the political subdivision of its mandatory duty to provide a defense, we would be legislating. The appropriateness of the political subdivision's decision not to furnish a defense may be searched only as to application of the statute and not with the added application of subsequent evidence.

This first assignment of error is found to be without merit.

Assignment of error number two reads that the trial court erred in holding that the $1500.00 sum received by appellee from his union to defray the cost of his legal counsel was not a setoff within the meaning of Ohio Revised Code Section 2744.05.

As a part of his judgment entry, the trial judge made the following finding:

"Defendant contends it is entitled to a One Thousand Five Hundred Dollar ($1,500.00) set-ff

from any award of damages granted plaintiff herein. This sum is based upon a retainer in that amount advanced for Plaintiff by his union representatives. It was advanced to defray the legal costs Plaintiff was likely to incur in his defense of the Federal suit. Defendant asserts this advance was a set-off which it was entitled to have deducted from the award pursuant to Ohio Revised Code 2744.05(B).

"This Court's interpretation of the cited statute leads to different conclusion. The section relied upon by Defendant concerns the case where tortious conduct is alleged against a governmental subdivision in connection with either its governmental or proprietary functions. The same result is not obtained where, as here, the issue is that same governmental subdivisions wrongful refusal to defend or to provide a defense for an employee. Moreover, the evidence in the instant case clearly discloses the $1,500.00 advance cannot be construed to be a benefit. It was simply an advance by Plaintiff's union to assist him in defending against a Federal lawsuit because the City refused to do so. Further, Plaintiff's counsel have clearly obligated themselves, in his name, to reimburse the advance in full to Plaintiff's union, event though this Court has granted Plaintiff less than the total award of attorney's fees he sought. Hence, this Court will not characterize such an obligation as a 'benefit' warranting a set-off to Defendant."

During a hearing before the trial court, counsel for the appellee testified that the Fraternal Order of Police, a union to which the appellee belonged, had advanced to the appellee the sum of $1500.00 to aid in his defense of the suit filed in the Federal Court. Counsel for the appellee stated at this hearing:

"Yes. We advised them they would be reimbursed if we were successful in recovering fees."

The following dialogue also transpired between the trial judge and counsel for the appellee:

"THE COURT: Okay, you testified, Paul, when you were on the stand that there was $2,100 paid already on this bill?

"MR. GAINS: That is to be refunded, your honor.

"THE COURT: By you?

"MR. GAINS: Yes, per successful--I can't take money off that guy. It's not my money.

"THE COURT: Is that part of your statement?

"MR. ARMOUR: I think he may have testified to it.

"THE COURT: I say, is that on your statement?

"MR. GAINS: That refund is due Rogers?

"THE COURT: That so much was paid and so much you have to pay back?

"MR. GAINS: No. If they cut us a check, it goes through the trust account, and we're paying them back what they paid us." (Tr. 62).

At that point, counsel for the appellant stated to the court that under sovereign immunity there was a section for setoffs and any benefits already conferred. Counsel had reference to R.C. 2744.05, which read, in pertinent part, as follows:

"(B) If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits. Nothing in this division shall be construed to limit the rights of a beneficiary under a life insurance policy or the rights of sureties under fidelity or surety bonds."

The very simple question, under this assignment of error, is whether the $1500.00, which was advanced conditionally, to the appellee, could be construed as a benefit received. Counsel stated, without contradiction, that the understanding was that the sum advanced would be returned to the Fraternal Order of Police if there was any recovery of attorney fees. We cannot conclude from this scenario that the amount advanced by the Fraternal Order of Police was, indeed, a received benefit. We pass this assignment of error without determining whether R.C. 2744.05, as a matter of law, applies to the case at hand.

The third assignment of error complains that the trial court erred in holding that interest on the damage amount, appellee's legal fees, should run from the date on which each service was rendered by appellee's legal counsel.

In *State, ex rel. Bruml* v. *Brooklyn* (1973), 141 Ohio St. 593, at 599, the Ohio Supreme Court stated that "* * * the courts of this state have adopted the general view that a municipality is liable for interest on its obligations the same as a natural person." As a part of his final judgment entry, the trial judge ordered the payment "* * * interest at the rate of ten percent (10%) per annum from the date of each service

rendered in both the Federal action and the within action and Plaintiff's costs herein."

Attached as an exhibit to his motion for summary judgment, the plaintiff-appellee set forth for the court a part of a written contract executed between his union, the Fraternal Order of Police, and appellant City of Youngstown. Article XIII of this contract stated:

"Legal defense and indemnity shall be provided pursuant to Ohio Revised Code Section 2744.07."

R.C. 1343.03(A) read, in pertinent part, as follows:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon and bond, bill, note, or other instrument of writing, * * * the creditor is entitled to interest at the rate of ten per cent per annum * * *."

The Court of Appeals for Cuyahoga County, in the case of *Cannell* v. *Rhodes* (1986), 31 Ohio App. 3d 183, held, by way of its first syllabus, that a lawyer could recover prejudgment interest on an agreement for professional services. In the instant case, the plaintiff-appellee was party to a written contract which provided for legal services by way of defense to the case which was filed against him in the Federal Court. The appellant argues that the Ohio Supreme Court, in the case of *Cleveland Ry. Co.* v. *Williams* (1926), 115 Ohio St. 584, has previously held that interest does not run on a judgment until the judgment is liquidated, in other words, capable of being precisely determined in amount. There is a difference between the *Cleveland Ry.* case and this case. The *Cleveland Ry.* case involved a lawsuit for personal injury, wherein the damages were certainly unliquidated and not possible to determine until a judgment was rendered. The Court of Appeals for Summit County has given its attention to the application of R.C. 1343.03 and as to the question of liquidated or unliquidated damages in the case of *Shaker Savings Assn.* v. *Greenwood Village, Inc.* (1982), 7 Ohio App. 3d 141, Syllabus 2, as follows:

"Prejudgment interest will not be denied, although the sum due is unliquidated, where the amount is capable of ascertainment by mere computation, or is subject to reasonably certain calculations by reference to existing market values; but where the computation is based on market values, such values must be well established and knowledge thereof must be accessible to the debtor."

The amounts due and owing for attorney fees in the Federal Court were certainly capable of computation by reference to existing reasonable attorney fees in the area.

Accordingly, this third assignment of error is found to be without merit.

The appellees filed a cross-appeal in this case and, for their first assignment of error, complain that the trial court erred in failing to award the appellee attorney fees for time expended in preparation for the damages' hearing, attendance and participation at the damages' hearing, the conference with appellant's counsel after the damage hearing and the research and preparation of the trial brief and rebuttal brief, all of which were ordered by the court.

In his judgment entry, the trial judge ruled that:

"Plaintiff has also sought recovery for his counsel's additional time in preparing and submitting a trial brief and a rebuttal brief to this Court subsequent to the hearing on damages. However, this Court has excluded such additional time from its determination."

At the conclusion of the hearing for assessment of damages, the trial judge encouraged the parties to confer and possibly arrive at an agreed upon sum in case it was found that the appellant was liable for this alleged attorney fees. The trial judge went on to state that if they could not arrive at an agreed upon figure "then I'm going to want a brief." Apparently, a figure could not be agreed upon. The appellee filed a trial brief with the trial court fifteen pages in length. The appellant responded with a nine page brief to which the appellee filed a six page rebuttal brief. It was within the discretion of the trial judge, controlled by the evidence presented to him, to determine the reasonable amount of attorney fees to which the plaintiff-appellee was entitled. The actions of the appellee, which gave to this case, were his own personal action. His actions had nothing to do with his employment by the City of Youngstown. If the City of Youngstown had afforded him a defense in the Federal Court, it could have been said that public monies were being expended in a matter strictly personal to the plaintiff-appellee. However, that contingency arises as the result of the statute involved. If it was this consideration that motivated the trial judge in arriving at his determination of reasonable fees, we can find no fault with his decision.

Judgment affirmed. Cause is remanded to the trial court for consideration of attorney fees incurred in the prosecution of this appeal.

*Judgment affirmed and
cause remanded.*

DONOFRIO, J., and COX J., concur.